2017 PA Super 182

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| NAVARRO BANKS | No. 922 MDA 2016 |

Appeal from the Order Entered May 9, 2016
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0002158-2015

BEFORE:  SHOGAN, J., MOULTON, J., and STEVENS, P.J.E.[*]

OPINION BY MOULTON, J.:                    **FILED JUNE 12, 2017**

The Commonwealth of Pennsylvania appeals from the May 9, 2016 order entered in the Lycoming County Court of Common Pleas granting Navarro Banks' motion to suppress physical evidence.  Because we conclude that the trial court abused its discretion in granting Banks relief on grounds not asserted in his motion to suppress, we reverse.

The facts of this case are undisputed.  On July 21, 2015, Pennsylvania Board of Probation and Parole Agent Kriger[1] received an anonymous tip that Banks was violating his parole.  Based on this allegation, Agent Kriger and

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Agent Kriger's first name is not evident from the record.  In its opinion, the trial court errantly refers to Agent Kriger as Agent "Kriner."

Agent Tracy Gross[2] (together, "the Agents") went to Banks' parole-approved residence and knocked on the door. Banks answered the door and spoke with the Agents on the front porch; Agent Gross did not see any contraband from the porch and could not remember whether the front door was open during the conversation. The Agents asked Banks whether "he had anything in his home that would violate his parole." N.T., 4/29/16, at 5. Banks admitted that he had a firearm and some synthetic marijuana in the house. Based on that admission, the Agents entered the residence and located the firearm, which was hidden behind Banks' bedroom door, and the synthetic marijuana, which was in a bag in the living room. The Agents then called the police, who obtained a search warrant and seized the firearm, the synthetic marijuana, seven cell phones, a digital scale, and another bag containing synthetic marijuana.

Banks was arrested and charged with possession with intent to manufacture or deliver a controlled substance ("PWID"), possession of a controlled substance, possession of drug paraphernalia, and persons not to possess firearms.[3] On March 9, 2016, Banks filed a motion to suppress, arguing that the Agents "lacked reasonable suspicion to search [his] residence since [the] search was based on an unreliable, uncorroborated,

_____

[2] Agent Gross was not assigned to supervise Banks, but was "merely assisting." N.T., 4/29/16, at 6.

[3] 35 P.S. §§ 780-113 (a)(30), (a)(16), (a)(32), and 18 Pa.C.S. § 6105(c)(1), respectively.

anonymous tip," and, as such, the physical evidence recovered from that search should be suppressed as fruit of the poisonous tree. Mot. to Supp., 3/9/16.

On April 29, 2016, the trial court held a hearing on the motion. Banks' argument at the hearing was consistent with the argument in his written motion. His counsel stated that "the simple fact that [the Agents] went to [Banks'] home based on an anonymous tip[,] . . . with the purpose of trying to find contraband, forms the basis of an unreasonable search because the tip was not corroborated." N.T., 4/29/16, at 10. In response, the trial court asked counsel about the Agents' initial contact with Banks:

> THE COURT: Okay, let me ask you a question.
>
> [BANKS' COUNSEL]: Yes, Your Honor.
>
> THE COURT: Are you saying that they're not allowed to even go to his house, knock on the door, and ask him questions? Because that's what they said. I mean it's – let me try to ask the question differently. It seems like the testimony was, hey we got this tip he was doing stuff he shouldn't have been doing, so we decided to check it out. We go to his door, we knock on his door, he comes out, we ask him a question, he answers the question. It's not a search at that point, is it? I – I guess that's what your contention is, though.
>
> [BANKS' COUNSEL]: Our contention is that at that point they have made contact solely because of the uncorroborated anonymous tip. This isn't a regularly scheduled home visit, this isn't even a random home visit. Because the sole purpose was due to this anonymous tip that it tainted the whole process, including going to his home and submitting him to questioning about what might be found within.
>
> THE COURT: Okay, so . . . your argument is that they're not allowed to even go the home and ask him questions

- 3 -

based on an anonymous tip, because the asking of questions constitutes a search?

[BANKS' COUNSEL]: We would submit that without corroborating the evidence – or the . . . tip itself, that it was improper for them to place Mr. Banks – to go to Mr. Banks' [] residence  and yes, and to – to put him under questioning concerning that uncorroborated tip.

THE COURT: That's my point. You have to use the search and/or seizure language. So what you're saying is when they went there, knocked on the door, and he came out and they started asking him questions, that it was a search?

[BANKS' COUNSEL]: Yes, we would argue that either he was seized at that point, and was placed – and that –

THE COURT: Search or a seizure?

[BANKS' COUNSEL]: Yes.

*Id.* at 10-11. The Commonwealth then argued that the Agents' actions were a "knock-and-talk, which is backed up by case law for police officers," and that Banks' admission gave the Agents reasonable suspicion to search under section 6153(d)(6) of the Prisons and Parole Code.[4] *Id.* at 12. The trial court then summarized the Commonwealth's position:

---

[4] Section 6153(d)(6) provides:

The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision. In accordance with such case law, the following factors, where applicable, may be taken into account:

(i)  The observations of agents.

(ii)  Information provided by others.

*(Footnote Continued Next Page)*

> THE COURT: So what you're saying is they had the right to go there. At the time they went they knocked on the door, he came out, and they just talked to him, and there's nothing that prevents them from just talking to him, and once he admitted that there were firearms – that there was a firearm and synthetic marijuana, that gave them the reasonable suspicion to then conduct the search?
>
> [COMMONWEALTH]: Correct, Your Honor . . .

*Id.* at 12-13.

On May 9, 2016, the trial court granted the motion to suppress. In its opinion, the trial court outlined the parties' respective positions but concluded that "[t]he determinative issue in this case . . . involves the level of interaction the parole agents had with [Banks] once they went to his home." Trial Ct. Op., 5/9/16, at 3. The trial court explained that it was granting the motion to suppress because the Agents initiated an investigative detention of Banks when they questioned him on the porch. *Id.* Finding that the interaction was not a "mere encounter," the trial court concluded that "[t]here clearly was a level of 'official compulsion to stop or

*(Footnote Continued)* _____

> (iii) The activities of the offender.
>
> (iv) Information provided by the offender.
>
> (v) The experience of agents with the offender.
>
> (vi) The experience of agents in similar circumstances.
>
> (vii) The prior criminal and supervisory history of the offender.
>
> (viii) The need to verify compliance with the conditions of supervision.

61 Pa.C.S. § 6153(d)(6).

respond[,]'" and that there was no "credible information" to support the investigative detention. *Id.* at 3-4.

On June 7, 2016, the Commonwealth filed a timely notice of appeal.[5] On appeal, the Commonwealth asserts that the trial court erred in granting Banks' suppression motion. Our standard of review on such matters is well settled:

> When the Commonwealth appeals from a suppression order, this Court follows a clearly defined scope and standard of review. We consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. This Court must first determine whether the record supports the factual findings of the suppression court and then determine the reasonableness of the inferences and legal conclusions drawn from those findings. In appeals where there is no meaningful dispute of fact, as in the case *sub judice,* our duty is to determine whether the suppression court properly applied the law to the facts of the case.

*Commonwealth v. Arthur*, 62 A.3d 424, 427 (Pa.Super. 2013) (internal citations and quotation marks omitted).

The Commonwealth argues that the trial court "erred in granting the Motion to Suppress because [Banks] failed to raise, in his Motion to Suppress, an allegation that [he] was illegally detained." Cmwlth.'s Br. at 14. The Commonwealth notes that Banks' motion to suppress "simply

---

[5] The notice of appeal included a certification pursuant to Pennsylvania Rule of Appellate Procedure 311(d) "that the granting of the Motion to Suppress terminates or substantially handicaps the prosecution of this case." Not. of App., 6/7/16.

- 6 -

alleged that the search of the residence was illegal as the [A]gents lacked reasonable suspicion to search the residence based on an anonymous tip," and did not raise the issue of whether Banks had been seized at the outset of the conversation on his porch. *Id.* at 14-15. Thus, the Commonwealth asserts that Banks waived this issue by failing to include it in his motion to suppress.[6] We agree.

Pennsylvania Rule of Criminal Procedure 581(D) requires that a motion to suppress "state specifically and with particularity the evidence sought to be suppressed, **the grounds for suppression**, and the facts and events in support thereof." Pa.R.Crim.P. 581(D) (emphasis added). Our decision in *Commonwealth v. Whiting*, 767 A.2d 1083 (Pa.Super. 2001), is instructive here. In *Whiting*, the trial court granted the defendant's motion to suppress statements as well as physical evidence found in the defendant's home and vehicle. 767 A.2d at 1086. However, the defendant did not raise in his suppression motion any issues regarding the physical evidence found in the vehicle, and the defendant did not amend his motion to include this issue. *Id.* We concluded that the trial court abused its discretion:

---

[6] In response, Banks argues that the Commonwealth waived its waiver argument by failing to raise it before the trial court. Banks' Br. at 7-8 (citing Pa.R.A.P. 302). We disagree. The Commonwealth has the right to "appeal from an interlocutory order in a criminal action 'where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.'" *Commonwealth v. Andre*, 17 A.3d 951, 956 (Pa.Super. 2011) (quoting Pa.R.A.P. 311(d)). "Our Supreme Court has consistently held that the rule applies to pretrial rulings that result in the suppression . . . of Commonwealth evidence." *Id.*

Without raising this issue in any form of objection or motion, Whiting effectively waived his challenge to the search of the car. We have been unable to find any evidence of an oral motion to amend Whiting's pre-trial suppression order, nor do the docket sheets refer to such a filing.

Accordingly, it was improper, and therefore an abuse of discretion for the trial court to voluntarily raise this issue and rule upon it in Whiting's favor where he never raised the issue in any suppression motion, let alone with specificity and particularity. Moreover, it was improper for the reason that the court never took any testimony or evidence at the suppression hearing on this issue and, therefore, could not make an informed decision under Pa.R.Crim.[P.] 323(i).[7] **Finally, the Commonwealth was not able to fulfill its burden of presenting evidence on the issue and establishing that such challenged evidence was not obtained in violation of the defendant's rights**. In fact, the transcribed testimony of the suppression hearing only touches upon the consent to search Whiting's car.

*Id.* at 1087-88 (citations and footnote omitted) (emphasis added).

Here, Banks did not argue that he was illegally seized in his motion to suppress; he argued only that police lacked reasonable suspicion to search the residence. Banks also did not amend his motion to raise the seizure issue, either orally or in writing.[8] Because Banks failed to argue that he was

---

[7] Rule 323 was amended on March 1, 2000 (effective April 1, 2001) and renumbered Rule 581; no substantive changes have been made to paragraph (i).

[8] At the hearing, it appears the trial court attempted to determine whether Banks was arguing that the encounter on the porch was a search or a seizure, but stopped short of asking counsel about any investigative detention. N.T., 4/29/16 at 10-13. Nevertheless, despite the trial court's suggestive questions, Banks neither asserted this issue in his motion nor moved to amend his motion to include the issue. As a result, the

*(Footnote Continued Next Page)*

illegally seized, the Commonwealth had no opportunity to respond to that argument at the hearing.[9] **See Whiting**, 767 A.2d at 1088. Accordingly, we conclude that the trial court abused its discretion in suppressing the physical evidence found in Banks' residence on grounds not asserted in Banks' motion.[10]

Order reversed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/12/2017

_____

*(Footnote Continued)* ————————————

Commonwealth did not, and had no need to, present evidence or argument directed to the question whether Banks' conversation with the agents on the porch rose to the level of an investigative detention.

[9] At oral argument before this Court, the Commonwealth stated that had it been on notice that Banks was claiming he had been unlawfully seized, it would have presented testimony and argument directed to that issue.

[10] Because the trial court did not grant relief based on Banks' reasonable suspicion argument, we need not address that issue.