J-S53036-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAHEEM HUTCHINSON | : | No. 1915 EDA 2019 |

Appeal from the Order Entered May 30, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0006852-2018

BEFORE:  SHOGAN, J., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:　　　　　　**FILED:  APRIL 26, 2021**

The Commonwealth appeals from the order entered in the Court of Common Pleas of Philadelphia County (trial court) granting Raheem Hutchinson's (Hutchinson) motion to suppress the gun seized from his mother's house by juvenile probation officers during a consensual search.  We reverse.

**I.**

We take the following pertinent facts and procedural history from our independent review of the certified record.  On September 27, 2018, the Commonwealth charged Hutchinson with possession of firearm prohibited and

_____

[*] Retired Senior Judge assigned to the Superior Court.

related charges.[1]  The charges resulted from a gun found by juvenile probation officers during a search of his mother's home on September 7, 2018, during a home visit.  Hutchison was subject to GPS monitoring as a condition of being on juvenile probation.

On November 28, 2018, Hutchinson filed a boilerplate motion to suppress the firearm in which he alleged that he had been subject to "searches [that] resulted in the seizure of clothing, correspondence, reading and pictorial material, furniture and other materials and items of property," "said seizures were the result of illegal searches carried on without legally efficacious warrants and without probable cause to do so, and not incident to a lawful arrest and without the consent of the defendant," "the evidence was recovered pursuant to a traffic stop that was lacking in reasonable suspicion or probable cause," that "execution of warrant(s) was in violation of Rule 207 of the Pennsylvania Rules of Criminal Procedure" and "defendant's constitutional rights."  (Motion to Suppress, 11/28/18, at 5-6).

At the outset of the May 2, 2019 hearing on the suppression motion, Hutchinson stated that he was seeking to suppress the firearm seized by the probation officers on the theory that they lacked reasonable suspicion to believe that he was violating his probation or in possession of contraband

---

[1] 18 Pa.C.S. §§ 6105 (possession of firearms prohibited), 6106 (firearms not to be carried without a license), 3925 (receiving stolen property) and 6108 (carrying a firearm in public in Philadelphia), respectively.

when his mother consented to the search of their residence and that, therefore, her consent was invalid. (*See* N.T. Hearing, 5/02/19, at 4-5).

In response, the Commonwealth presented Juvenile Probation Officer Joseph Cockerill to rebut Hutchinson's theory who testified to the circumstances surrounding the search of Hutchinson's residence and seizure of the firearm. He stated that on September 7, 2018, he was the Supervisor of the Juvenile Enforcement Team and that he and his team, which consisted of three other probation officers (Probation Officers William King, Juan Rodriguez and Robert McGowen), a police sergeant (Sergeant Williams) and "additional police and probation staff" were working in the area around Hutchinson's residence because the area was "spiking with juvenile violence" and Hutchinson was on their list that day for probation contact because he was on probation stemming from a juvenile arrest.[2] The team "had no knowledge or information that [Hutchinson] was even partially or remotely responsible for this spike in violence," but visited his residence to ensure "that there [were] no threats or safety issues and [to] mak[e] sure he [was] following his probation." Officer Cockerill conceded that he did not have a warrant or "have any reasonable suspicion at that time to do a warrantless

---

[2] At the time of the subject visit and search, Hutchinson was nineteen-years-old. Although the Commonwealth makes much of the trial court acknowledging this fact because it was not introduced at the hearing, Hutchinson's date of birth is on the trial court docket and, thus, under our standard of review, is something we may consider. *See Miller*, *infra* at 1278-79.

search without any consent." (N.T. Hearing, 5/02/19, at 7, 18-19); (*see id.* at 8, 12-13, 20).

The team arrived at the residence Hutchinson shared with his mother, Ms. Mason, between 9:30 and 10:00 a.m., at approximately the time Officer Cockerill expected Hutchinson to return home based on the GPS surveillance. The officer explained that at approximately 10:00 a.m., the team observed Hutchinson walking down the street toward the home. Officer King engaged Hutchinson while Officer Cockerill approached Ms. Mason at the door. (*See id.* at 8-9, 19-20). The officer explained to Ms. Mason

> that there was a court order at [Hutchinson's] last court hearing that the judge wanted us involved in his case and that … we wanted to sit down and we wanted to interview [Hutchinson] and his mother and we wanted to conduct a warrantless probation search with her consent.

(*Id.* at 9). Ms. Mason gave verbal consent for the officers "to search the area that is either occupied or controlled by Hutchinson." (*Id.* at 11).

Officers from the team began clearing and searching "various floors" of the home. Officer King was assigned to the second floor and Officer Williams searched the first floor. Officers Rodriguez and McGowen also began searching, but Officer Cockerill was unable to identify their exact location. While the search was occurring, Officer Cockerill remained downstairs with Ms. Mason and went over the written consent form. (*See id.* at 12-14). He testified that:

> I explained the reason for why we're there. I explained what would happen if there was—if the search was, what we would call

- 4 -

negative, meaning nothing was found of significance; that it would be reported back to the probation officer either way, which would then be reported back to the judge and then conversely if we found something of significance there was a few different ways that, you know, something would happen depending on what we would come across.

(**Id.** at 11).

Ms. Mason expressed concern of what might happen if anything were found but did not express reluctance to sign the form. As she and Officer Cockerill completed the written consent, she indicated that the one family residence was hers, although the officer did not testify as to whether she owned or rented the home. He stated that during his conversation with Ms. Mason, he established that Hutchinson slept in the bed that was on the right side of the shared second-floor bedroom. (**See id.** at 11-12, 14, 17).

He testified further that while he and Ms. Mason were speaking, Probation Officer King summoned him through his earpiece to the second-floor bedroom, telling him "that there was some significant items observed in the bedroom" that Officer Cockerill should see. Officer Cockerill did not explain exactly when Ms. Mason signed the written consent form in relation to when Officer King searched the second-floor bedroom, only that Officer King began searching the room after Ms. Mason had given her verbal consent. (**Id.** at 14); (**see id.** at 6-20).

When Officer Cockerill went upstairs to the bedroom, Officer King showed him what he had found

> a black handgun on the … right side of the bedroom near the bed sitting on top of the shoe box. Also, a GPS charger which would commonly be used to charge [Hutchinson's] GPS device that he was fitted for [and] a GPS probation officer business card that was also sitting on the bed of the location of the firearm.

(*Id.* at 14). Officer Cockerill explained that the shoebox was within "a foot or two" of either the head or foot of the right-side bed, depending on at which end Hutchinson slept. Officer Cockerill clarified that the GPS charger was on the bed, but he was unsure exactly where the business card was. (*Id.* at 15). He conceded that if Ms. Mason had not consented to the search of Hutchinson's shared bedroom, he would have had no grounds to do so because he did not have any reasonable suspicion and that he would have only requested to "conduct an interview with [Ms. Mason] and [Hutchinson] together just to go over his probation stipulations." (*Id.* at 18).

Hutchinson did not testify or present any evidence. The trial court took the matter under advisement and, on May 30, 2019, it entered an order granting Hutchinson's motion, explaining that, although "case law on this issue is not exactly on point with our facts … reasonable suspicion is required for a search for somebody who is on probation or parole." (Order, 5/30/19, at 3-4). The court further found that "[t]here is no issue of consent in this case, as far as the search." (*Id.* at 4).

The Commonwealth timely[3] appealed the court order granting suppression, certifying that the court's ruling has terminated or substantially handicapped Hutchinson's prosecution for weapons offenses.[4] **See** Pa.R.A.P. 311(d). The Commonwealth and the trial court have complied with Rule 1925. **See** Pa.R.A.P. 1925.

## II.

The Commonwealth argues that the trial court erred as a matter of law by granting Hutchinson's motion to suppress because reasonable suspicion was not required for the officers to request Ms. Mason's consent. It also maintains that the court cannot now support its order with *sua sponte* alternate theories not litigated by Hutchinson and to which the

---

[3] The trial court states that the Commonwealth's appeal was untimely. (**See** Trial Court Opinion, 6/11/20, at 1 n.1). However, the thirtieth day following the suppression order's entry was a Saturday, thus, the Commonwealth had until the following Monday to file a timely notice of appeal. **See** ***Commonwealth v. Millisock***, 873 A.2d 748, 751 n.10 (Pa. Super. 2005) (citing 1 Pa.C.S. § 1908).

[4] "When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts." ***Commonwealth v. Miller***, 56 A.3d 1276, 1278-79 (Pa. Super. 2012), *appeal denied*, 70 A.3d 810 (Pa. 2013) (citation omitted).

Commonwealth, therefore, had no chance to respond.  (**See** Commonwealth's Brief, at 8).[5]

## A.

The Fourth Amendment to the United States Constitution protects an individual against unreasonable searches and seizures.  **See** U.S.C.A. Cont. Amend. 4.  Generally, law enforcement actors are prohibited by the Fourth Amendment from entering an individual's residence without a warrant based on probable cause.  **See Commonwealth v. Wallace**, 42 A.3d 1040, 1042 (Pa. 2012).  "Warrantless searches and seizures inside a home … are presumptively unreasonable unless the occupant consents **or** probable cause and exigent circumstances exist to justify intrusion."  **Commonwealth v. Dean**, 940 A.2d 514, 521 (Pa. Super. 2008) (emphasis added).

Pursuant to Section 6304 of the Juvenile Act, a warrant is not required for probation officers to conduct "home visits" of a probationer's residence because it is not a search but is conducted as part of their supervisory duties to ensure the probationer is complying with his probationary terms.  **See** 42 Pa.C.S. § 6304(a)(3).  Further, although "[a] probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be 'reasonable[,]'" because a probationer has a diminished expectation of privacy, he has limited Fourth Amendment rights.  **Griffin v. Wisconsin**, 483

---

[5] Hutchinson has failed to file a brief in this matter.

U.S. 868, 873 (1987); *see In re J.E.*, 937 A.2d 421, 425 (Pa. 2007). Warrantless searches of probationer's home do not require probable cause, but only "reasonable suspicion to believe that the real or other property in the possession of or under the control of the [probationer] contains contraband or other evidence of violations of the conditions of supervision." 42 Pa.C.S. § 6304(a.1)(4)(ii); *see also Commonwealth v. Smith*, 85 A.3d 530, 537 (Pa. Super. 2014); *In re J.E.*, *supra* at 425.

However, in consent cases, the level of suspicion required to support a **search** is not necessary for requesting voluntary **consent**, as the relevant inquiry is whether the initial encounter is legal. *See Commonwealth v. Strickler*, 757 A.2d 884, 888–89 (Pa. 2000) ("The central Fourth Amendment inquiries in consent cases entail assessment of the constitutional validity of the citizen/police encounter giving rise to the consent; and, ultimately, the voluntariness of consent. Where the underlying encounter is found to be lawful, voluntariness becomes the exclusive focus.") (internal citations and footnote omitted).

For example, in *Strickler*, *supra*, a police officer noticed Strickler urinating by the side of the road and asked for permission to search Strickler's vehicle without having any basis on which to conclude Strickler had anything illegal inside. Strickler consented to the search and the officer found drug paraphernalia in the console. A panel of this Court reversed the trial court's order suppressing the contraband and our Supreme Court affirmed our

decision. Because the initial encounter between Strickler and the police was legal and, under the totality of the circumstances, the consent was voluntary, the trial court erred in suppressing the evidence, regardless of the fact that there was no reasonable suspicion to request that consent. ***See Strickler***, ***supra*** at 900-02.

Similarly, here, the probation officers were legally at Hutchinson's home for an authorized visit as part of their supervisory duties to ensure that he was complying with his probationary terms. Because the initial encounter was legal, the probation officers could then ask for consent to search, even though they lacked reasonable suspicion to believe Hutchinson was in violation of his probation. ***See id.***[6]

---

[6] The cases the trial court relied on in making its decision do not change our disposition. (***See*** N.T. Hearing, 5/30/20, at 3-4). For example, ***In re J.E.***, 937 A.2d 421 (Pa. 2007), probation officers went to J.E.'s stepmother's house and, **without** first obtaining her consent, entered J.E.'s bedroom, looked under a mattress and found a gun. ***See In re J.E.***, ***supra*** at 423. The Court explained that, merely because J.E. signed a waiver form agreeing to all searches and seizures as a term of probation, this did not justify the search, as such forms are interpreted to authorize searches based on reasonable suspicion related to the supervising officer's duties. ***See id.*** at 425. In ***Commonwealth v. Hughes***, 836 A.2d 893 (Pa. 2003) (plurality decision), the parole officers went to Hughes' home and observed several teenage girls standing on the front porch. The officers asked the girls if they could go inside to search for Hughes and the girls gave permission. The officers observed marijuana in Hughes' bedroom. On appeal, the Court concluded that although the search was not reasonably related to a parole violation by Hughes, it would be legal if the teens had actual or apparent authority to give consent. ***See Hughes***, ***supra*** at 899-904. The instant case does not involve a blanket advance waiver of rights and ***Hughes*** supports denial of the motion to

Hutchinson's only theory at the suppression hearing was that Ms. Mason's consent was invalid because the probation officers lacked reasonable suspicion, was legally flawed, and the trial court erred in granting the motion to suppress on this legal basis. *See Miller*, *supra* at 1278-79.

**B.**

The Commonwealth also argues that this Court should not consider new arguments raised for the first time in the trial court's Rule 1925(a) opinion because the Commonwealth did not have an obligation nor an opportunity to elicit testimony with respect to these claims where Hutchinson never raised them below. (*See* Commonwealth's Brief, at 14-15). Specifically, the Commonwealth points out that in its Rule 1925(a) opinion, for the first time and in contradiction with its basis for granting Hutchinson's motion, the trial court acknowledges that probation officers do **not** need reasonable suspicion to search if they have valid consent from a third party. (*See* Commonwealth's Brief, at 11-12) (citing Trial Ct. Op., at 12). Then, despite expressly finding that there was no issue with Ms. Mason's consent at the time of granting the motion, it now theorizes that the Commonwealth failed to introduce sufficient evidence that Ms. Mason had authority to consent to the search, that her consent was voluntary under the totality of the circumstances, or that the

_____

suppress since the trial court expressly found there was no issue with Ms. Mason's consent.

search did not exceed the scope of the consent. (*Id.* at 14) (citing Trial Ct. Op., at 12-20). These Commonwealth argues that these new theories are an improper basis on which the trial court can rely to support its decision and on which we can affirm it.

This case presents a unique situation in which it is not a party advancing new theories on appeal,[7] but the trial court.

> It is a settled principle of appellate review, of course, that courts should not reach claims that were not raised below. *See* Pa.R.A.P. 302(a). … [C]ourts generally should not act *sua sponte* to raise claims or theories that **the parties** either did not raise below or failed to raise in their appellate pleadings. [Our Supreme] Court has consistently held that an appellate court cannot reverse a trial court judgment on a basis that was not properly raised and **preserved by the parties**. Where **the parties** fail to preserve an issue for appeal, the Superior Court may not address that issue *sua sponte*.

***Commonwealth v. Colavita***, 993 A.2d 874, 891 (Pa. 2010) (case citations omitted).

We find ***Commonwealth v. Banks***, 165 A.3d 976 (Pa. Super. 2017), instructive. In ***Banks***, Banks argued for suppression under the theory that parole agents had no right to visit his home in the first place without reasonable suspicion. The trial court granted the motion to suppress on a different theory, that the agents had illegally detained Banks on his front porch before he admitted possessing contraband. This Court concluded that the trial

---

[7] We again note that Hutchinson failed to file an appellate brief.

court committed reversible error in granting a suppression motion on a basis not advanced by the defendant. **See Banks**, **supra** at 980-91; **see also Commonwealth v. Carter**, 234 A.3d 729, 734 (Pa. Super. 2020), *appeal denied*, 2020 WL 752512, at *1 (Pa. filed Feb. 26, 2021) (concluding trial court erred in suppressing motion on theory not pled by defendant); **Commonwealth v. Freeman**, 128 A.3d 1231, 1241-42 (Pa. Super. 2015) (defendant waives legal theory for suppression that is not pleaded).

Here, after specifically finding there was no consent issue, the trial court granted Hutchinson's suppression motion based on the **only** theory he advanced, that the probation officers lacked reasonable suspicion before asking for consent. Hutchinson waived any other theories for suppression, even if he raised them on appeal, let alone where the trial court now raises them on his behalf *sua sponte*. Had the court granted Hutchinson's motion based on its own *sua sponte* theories regarding the voluntariness of the consent itself or the scope of the search, where no such issues were ever raised and to which the Commonwealth was not on notice to respond, it would have been in error. **See Carter**, **supra** at 734; **Banks**, **supra** at 980-91. Therefore, raising them now is error and we decline to affirm on these bases.

Accordingly, for the foregoing reasons, we reverse the order of the trial court granting suppression and remand.[8]

Order reversed.  Case remanded.  Jurisdiction relinquished.

Judge Shogan joins the memorandum.

Judge Lazarus concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/26/21

---

[8] Although, generally, a motion to suppress shall be filed in an omnibus pretrial motion within thirty days of arraignment, a supplemental motion may be considered in the discretion of the trial court if "the opportunity did not previously exist, or the interests of justice otherwise require."  Pa.R.Crim.P. 581(B); **see also Commonwealth v. Sodomsky**, 137 A.3d 620, 626 (Pa. Super. 2016).