J-A15042-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEVEN G. EAKIN | : | No. 1113 WDA 2021 |

Appeal from the Order Entered September 8, 2021
In the Court of Common Pleas of Venango County
Criminal Division at No(s): CP-61-CR-0000647-2017

BEFORE: BOWES, J., KUNSELMAN, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED: MAY 2, 2023**

The Commonwealth appeals from the order granting the pre-trial motion by Steven G. Eakin ("Eakin") to suppress evidence. Following our careful review, we are constrained to affirm.

We summarize the relevant factual and procedural history as follows: On August 11, 2017, Polk Borough Police Department Chief Edward E. Sharp, Jr. ("Chief Sharp") was on patrol in Frenchcreek Township. **See** N.T., 8/27/21, 44-45. Chief Sharp observed a vehicle traveling east in a westbound lane. Chief Sharp began to follow the vehicle and noted that it had traveled a half-mile in the wrong lane before coming to a stop near a bait shop. **See id**. at 45. Chief Sharp initiated a traffic stop. Upon approaching the driver's side of the vehicle, Chief Sharp recognized Eakin, with whom he had a friendly relationship. **See id**. at 46, 48. Chief Sharp also saw that Eakin had a martini glass with two olives in it in the middle of the center console. **See id**. at 48.

Chief Sharp, in order to remain "fair and impartial," called Polk Borough Police Department Sergeant Alan Heller ("Sergeant Heller")[1] to take over the investigation. *Id*. at 46.

Sergeant Heller, following his arrival on the scene, transported Eakin to a UPMC hospital where Eakin consented to a blood draw. *See* N.T., 8/27/21, at 26. Sergeant Heller arrested Eakin and ultimately charged him with driving under the influence ("DUI").[2] *See id*. at 32. Eakin filed a motion to suppress in which he alleged, among other things, that a traffic stop in Frenchcreek Township by a Polk Borough police officer was illegal under the Intergovernmental Cooperation Act ("ICA"), 53 Pa.C.S.A. §§ 2301-2317 and the Municipal Police Jurisdiction Act ("MPJA"), 42 Pa.C.S.A. §§ 8951-8955. *See* Omnibus Pretrial Motion for Relief, 4/23/21, at ¶¶ 15-21.[3] The trial court conducted a suppression hearing on August 27, 2021. At the suppression hearing, the parties stipulated to the following:

---

[1] Sergeant Heller retired from Polk Borough in October 2020 and subsequently became the Chief of Police in Harrisville Borough. *See* N.T., 8/27/21, at 21-22.

[2] *See* 75 Pa.C.S.A. § 3802(c).

[3] In April 2019, a jury convicted Eakin of DUI stemming from this incident. Eakin filed a direct appeal to this Court, in which he raised issues alleging error by the trial court in denying his pre-trial motion to suppress evidence. This Court, however, concluded *sua sponte* that Eakin had represented himself *pro se* at the suppression hearing without a valid waiver of his right to counsel on the record, and, accordingly, we vacated his judgment of sentence and remanded for further proceedings. *See Commonwealth v. Eakin*, 242 A.3d 387 (Pa. Super. 2020) (unpublished memorandum at *3).

> [T]he traffic stop . . . occurred in Frenchcreek Township. [C]hief Sharp observed [Eakin] operating the vehicle, which was the basis of his stop[,] when he was in . . . Frenchcreek Township. [A]t the time of the stop, there was a Joint Municipal Agreement between Polk Borough and Frenchcreek Township for police services to be provided by [o]fficers of Polk in Frenchcreek. Frenchcreek had a [r]esolution to adopt the Agreement, but no [o]rdinance. Polk had an [o]rdinance as to the Agreement. ***So, as of the time of the stop in Frenchcreek Township, Frenchcreek had no [o]rdinance adopting the Agreement.***

N.T., 8/27/21, at 68 (emphasis added).[4] Chief Sharp conceded that at the time of the stop: he was not responding to a request to assist a federal or state law enforcement officer; he had not been asked to participate in a federal, state, or local task force; the grounds for the traffic stop had not arisen in Polk Borough; and he had not at the time of the stop suspected a specific felony had been committed. ***See id***. at 51-56.

The trial court took Eakin's suppression motion under advisement and later issued an order on August 31, 2021 suppressing evidence obtained as a result of the August 11, 2017 stop. The court based the ruling on its conclusion that the ICA did not authorize the stop, since Frenchcreek had not enacted an ordinance adopting the Joint Municipal Agreement with Polk

_____

[4] ***Accord*** Joint Municipal Agreement for Law Enforcement Services, 4/13/06 (stating Frenchcreek Township's intent to contract with Borough of Polk for the provision of law enforcement functions in Frenchcreek by Polk Police Department); ***see also*** Polk Borough Ordinance No. 04-06-2006, §§ 306, 307 (enacting the intergovernmental cooperative agreement authorizing Polk Borough Police Department to police Frenchcreek Township, effective April 6, 2006). ***But see*** Joint Municipal Agreement For Law Enforcement Services, 7/12/18, at 6 (noting that both Polk Borough and Frenchcreek Township enacted a subsequent July 2018 Agreement into ordinances).

Borough, and none of the exceptions under the MPJA applied. *See* Order, 8/31/21, at 2. The court determined the controlling law was set forth by our Supreme Court in *Commonwealth v. Hlubin*, 208 A.3d 1032 (Pa. 2019) (plurality) (superseded by statute on other grounds).[5] *See* Order, 8/31/21, at 1. The Commonwealth timely moved for reconsideration, which the trial court denied. *See generally* Order, 9/13/21. The Commonwealth timely appealed and certified that the trial court's order will terminate or substantially handicap the prosecution. *See* Notice of Appeal, 9/20/21; *see also* Pa.R.A.P. 311(d). Both the Commonwealth and the trial court have complied with Pa.R.A.P. 1925.[6]

The Commonwealth raises the following issues for our review:

1. Whether the trial court erred in granting [Eakin's] motion to suppress by relying only on . . . *Hlubin*, . . . [which] involved a police sergeant who conducted a stop and arrest in a prearranged sobriety checkpoint located outside of his primary jurisdiction.

2. Whether the trial court erred in granting [Eakin's] motion to suppress, as our learned Superior Court has consistently found that suppression of evidence is not an appropriate remedy for a technical violation of the [MJPA].

---

[5] Following *Hlubin*, our legislature amended section 8953(a)(3) with the express intention of negating our Supreme Court's interpretation of that section. *See Commonwealth v. Forsythe*, 217 A.3d 273, 279 (Pa. Super. 2019). The Commonwealth, however, does not argue that section 8953(a)(3) applies, so this fact is not germane to the case *sub judice*.

[6] The trial court elected to specify where in the record the reasons for its ruling appear—*i.e.*, its September 13, 2021 order—rather than author a separate opinion in support of its ruling. *See* Trial Court Opinion, 10/14/21.

3. Whether the trial court erred in granting [Eakin's] motion to suppress, due to the Pennsylvania legislature amending [s]ection 8953 of the [MPJA] with the explicit intent to reverse the Supreme Court's interpretation of the MPJA in **Hlubin**.

Commonwealth's Brief at 4 (unnecessary capitalization and quotations omitted).

The Commonwealth, in all three of its issues, maintains the trial court erred in granting suppression based on its finding of extraterritorial policing without authorization under the MPJA. We note that though the Commonwealth raised three issues, it addresses them together in its argument section under the following heading: "The trial court erred in granting [Eakin's] motion to suppress for a technical violation of the [MPJA]." Commonwealth's Brief at 11. As the Commonwealth's issues are factually and legally intertwined, we similarly address them together.

On appeal from an order granting a suppression motion,

this Court follows a clearly defined scope and standard of review. We consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. This Court must first determine whether the record supports the factual findings of the suppression court and then determine the reasonableness of the inferences and legal conclusions drawn from those findings. In appeals where there is no meaningful dispute of fact, as in the case *sub judice,* our duty is to determine whether the suppression court properly applied the law to the facts of the case.

**Commonwealth v. Banks**, 165 A.3d 976, 979 (Pa. Super. 2017) (internal citation omitted).

The ICA authorizes and establishes formal rules for intergovernmental cooperation. *See* 53 Pa.C.S.A. § 2303. At the time of Eakin's stop in 2017, section 2305 required participating local governments to pass an ordinance adopting an intergovernmental agreement, and the ICA further provided that "a cooperation agreement is deemed to be in force (and enforceable) only after its adoption by ordinance by all of the cooperating governmental units. [*See*] 53 Pa.C.S.[A.] § 2315." *Hlubin*, 208 A.3d at 1039-40.[7] Further, our Supreme Court has articulated the interplay between the ICA and the MPJA as follows: Where the ICA does not authorize extraterritorial policing, an officer has "the authority to act outside the territorial limits of [his or her] primary jurisdiction[] only if an exception in the MPJA so provides." *Id*. at 1044.

This Court has recently set forth the law applicable to the MPJA as follows:

> The MPJA is intended to promote public safety while maintaining police accountability to local authority; it is not intended to erect impenetrable jurisdictional walls benefiting only

---

[7] *See also Forsythe*, 217 A.3d at 276 n.3 (stating that "a cooperation agreement is deemed to be in force only after its adoption by **ordinance** by all of the cooperating governmental units") (emphasis added). However, we note that our legislature amended the ICA, including section 2315, on November 7, 2019, effective January 6, 2020, to provide: "Any joint cooperation agreement shall be deemed in force as to any local government when the agreement has been adopted by ordinance **or resolution** by all cooperating local governments." 53 Pa.C.S.A. § 2315 (emphasis added); **see also** 2019, Nov. 7, P.L. 613, No. 80, § 1 (amending the ICA). The Commonwealth does not argue that the amended section 2315 should be given retroactive effect so as to apply to Eakin's 2017 stop. **Cf**. 1 Pa.C.S.A. § 1953 (stating that when a statute is amended, "the new provisions shall be construed as effective only from the date when the amendment became effective").

criminals hidden in their shadows. To that end, section 8953 of the MPJA authorizes arrests, execution of search warrants and other official police conduct outside of an officer's primary jurisdiction in six specific circumstances.

**Commonwealth v. Hobel**, 275 A.3d 1049, 1057–58 (Pa. Super. 2022) (citing, *inter alia*, **Commonwealth v. O'Shea**, 567 A.2d 1023, 1029 (Pa. 1989)) (quotations, brackets, and citations omitted), **appeal denied**, 143 WAL 2022, 2022 WL 10268195 (Pa. 2022). The six circumstances under which police are authorized to act outside the limits of their territorial jurisdiction are as follows:

(1) Where the officer is acting pursuant to an order issued by a court of record or an order issued by a district magistrate whose magisterial district is located within the judicial district wherein the officer's primary jurisdiction is situated, or where the officer is otherwise acting pursuant to the requirements of the Pennsylvania Rules of Criminal Procedure, except that the service of an arrest or search warrant shall require the consent of the chief law enforcement officer, or a person authorized by him to give consent, of the organized law enforcement agency which regularly provides primary police services in the municipality wherein the warrant is to be served.

(2) Where the officer is in hot pursuit of any person for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.

(3) Where the officer:

    (i) has been requested to aid or assist a Federal, State or local law enforcement officer or park police officer;

> (ii) has probable cause to believe that a Federal, State or local law enforcement officer or park police officer is in need of aid or assistance; or
>
> (iii) has been requested to participate in a Federal, State or local task force and participation has been approved by the police department of the municipality which employs the officer.
>
> (4) Where the officer has obtained the prior consent of the chief law enforcement officer, or a person authorized by him to give consent, of the organized law enforcement agency which provides primary police services to a political subdivision which is beyond that officer's primary jurisdiction to enter the other jurisdiction for the purpose of conducting official duties which arise from official matters within his primary jurisdiction.
>
> (5) Where the officer is on official business and views an offense, or has probable cause to believe that an offense has been committed, and makes a reasonable effort to identify himself as a police officer and which offense is a felony, misdemeanor, breach of the peace or other act which presents an immediate clear and present danger to persons or property.
>
> (6) Where the officer views an offense which is a felony, or has probable cause to believe that an offense which is a felony has been committed, and makes a reasonable effort to identify himself as a police officer.

42 Pa.C.S.A. § 8953(a)(1)-(6).[8]

Nevertheless, when a police officer's extraterritorial actions do not fall within one of these exceptions, suppression is not automatically appropriate. *See Hobel*, 275 A.3d at 1058 (citing *O'Shea*, 567 A.2d at 1029). This Court

---

[8] The legislature amended the MJPA on July 2, 2019 and directed that the current version have retroactive applicability dating to June 15, 1982. *See Forsythe*, 217 A.3d at 278-79.

has provided that, where there is a violation of the MPJA, we must apply the three-prong **O'Shea** test on a case-by-case basis:

> The factors to be considered in applying this case-by-case approach consist of all the circumstances of the case including [1] the intrusiveness of the police conduct, [2] the extent of deviation from the letter and spirit of the [MPJA], and [3] the prejudice to the accused. . . . The . . . spirit, or purpose of, the MPJA is to proscribe investigatory, extraterritorial forays used to acquire additional evidence where probable cause does not yet exist.
>
> [This] unquestionably sets forth the proper standard this Court is to employ in determining whether the exclusionary rule should act to suppress evidence obtained pursuant to an MPJA violation.

**Hobel**, 275 A.3d at 1058 (quoting **Commonwealth v. Henry**, 943 A.2d 967, 971-72 (Pa. Super. 2008)) (internal citations omitted).

Preliminarily, we note that the Commonwealth stipulated at the suppression hearing that, at the time of Eakin's stop, Frenchcreek Township had not adopted an ordinance enacting the Joint Municipal Agreement with Polk Borough. **See** N.T., 8/27/21, at 68. The Commonwealth, on appeal, concedes that the intergovernmental agreement needed to be enacted by each of the participating municipalities under 53 Pa.C.S.A. § 2305. **See** Commonwealth's Brief at 14. However, the Commonwealth makes no argument that the agreement was adopted by ordinance and thereby enacted by Frenchcreek Township at the relevant time, *i.e.*, when Chief Sharp stopped Eakin. Accordingly, the ICA did not authorize Polk Borough Police Department Chief Sharp to initiate a traffic stop of Eakin in Frenchcreek Township. **See** **Hlubin**, 208 A.3d at 1039–40; **see also** 53 Pa.C.S.A. § 2315 (providing, at

the time of Eakin's stop, that an ordinance need be enacted "by all cooperating local governments" for an agreement to be in force). Thus, if Chief Sharp was authorized to stop Eakin, the authority must derive from the MPJA and applicable case law.

The Commonwealth additionally concedes that there was an MPJA violation but argues that automatic suppression is not warranted, and that, instead, this Court should apply the *O'Shea* test. Commonwealth's Brief at 15-16, 17. The Commonwealth does not address in any depth the first prong of the *O'Shea* test, *i.e.*, the intrusiveness of the police conduct, nor does it address the third prong, *i.e.*, the prejudice to the accused. However, regarding the second prong, the Commonwealth argues that the stop at issue was not a "gross deviation from the letter and spirit of the Act," and that the officers here did not stop Eakin in an attempt to "purposefully expand their sphere of power or to engage in an extra[-]jurisdictional fishing expedition." Commonwealth's Brief at 17-19. The Commonwealth emphasizes the policy objectives behind the MPJA, including, as it asserts, the promotion of "public safety while maintaining police accountability to local authority; it is not intended to erect impenetrable jurisdictional walls benefitting only criminals hidden in their shadows." Commonwealth's Brief at 15 (internal citation omitted). The Commonwealth argues that the "public good is certainly advanced and protected by a Polk Borough police officer initiating a traffic stop on a drunk[] driver traveling in the wrong lane[] in an area that had been

- 10 -

approved by a Joint Municipal Agreement for more than a decade," and that the stop was not conducted in bad faith. Commonwealth's Brief at 15.[9]

Following our review, we discern no error of law by the trial court. We initially reiterate that the Commonwealth concedes neither the ICA nor MPJA authorized the stop at issue. Accordingly, we apply *O'Shea*.[10] The first prong of the *O'Shea* test concerns the intrusiveness of the police conduct. We must consider the "level of intrusion of a stop that results in an arrest, since only in this circumstance does the issue of possible suppression of evidence arise." *Hlubin*, 208 A.3d at 1048. In *Hlubin*, which concerned a sobriety checkpoint, while the checkpoint ordinarily lasted thirty to forty-five seconds, Hlubin, following questioning and observations by an officer, was removed from her vehicle, taken to a testing area, and subjected to field sobriety testing, blood testing, and arrest. *See id*. at 1048. Our High Court concluded that the stop resulted in a "high level of intrusiveness" for Hlubin. *See id*. Here, Chief Sharp's stop of Eakin resulted in a subsequent call to another officer, *i.e.*, Sergeant Heller, who, after arriving, transported Eakin to the hospital for blood

---

[9] The Commonwealth argues that section 8953(a)(4) of the MPJA, while not providing an exception to authorize the stop at issue, does support a finding that Chief Sharp initiated the traffic stop in good faith based on his belief that Frenchcreek Township had consented to Polk Borough Police Department patrolling its jurisdiction. *See* Commonwealth's Brief at 18-19.

[10] In *Hobel*, this Court noted that several of our Supreme Court justices indicated their opposition in *Hlubin* to the continued application of *O'Shea*, however, three declined to address the validity of *O'Shea*, and one supported its application. *See Hobel*, 275 A.3d at 1058 n.5. Accordingly, *O'Shea* "remains good law." *Id*.

testing and a subsequent arrest. As in *Hlubin*, the level of intrusiveness resulting from this stop was high. Accordingly, the first prong of the *O'Shea* test favors Eakin.

The second prong of the *O'Shea* test requires consideration of whether the police conduct deviated from the "letter and spirit" of the MPJA. Our Supreme Court has observed that when officers regularly leave their primary jurisdiction to police in other jurisdictions, "jurisdictional lines are not maintained but rather are obliterated. Moreover . . . where this extraterritorial activity has no advance legislative approval or legal oversight, there is plainly no accountability to local authority." *Hlubin*, 208 A.3d 1048. Here, no exceptions to the MPJA authorized Chief Sharp's stop of Eakin; and Chief Sharp was patrolling in Frenchcreek under the mistaken belief that he was authorized then to do so under the ICA. Notwithstanding the officers' good faith belief, Polk Police Department's routine provision of police services outside of its primary jurisdiction, *i.e.*, in Frenchcreek Township, was unauthorized at the time under the ICA. This contravenes the MPJA's policy, noted by our High Court in *Hlubin*, of maintaining jurisdictional police lines, and it adversely affects the MPJA's ultimate goal of maintaining police accountability to local authority. Therefore, the second *O'Shea* factor favors Eakin. *See id*.

The last *O'Shea* factor concerns the prejudice to the accused, *i.e.*, consideration of "whether the search would not have otherwise occurred or would not have been as intrusive" absent the violation. *Id*. (quoting *O'Shea*,

567 A.2d at 1030).  Here, Chief Sharp testified that he stopped Eakin following his observation of Eakin traveling for a half mile on the wrong side of the road. **See** N.T., 8/27/21, at 45.  Absent Chief Sharp's unauthorized presence, there is no evidence that this stop would have occurred, and, accordingly, Eakin would not have been stopped.  The third **O'Shea** prong thus favors Eakin.  Accordingly, following our application of **O'Shea**, we conclude the trial court committed no error in suppressing the evidence derived from the stop.

Order affirmed.

Judge Kunselman joins this memorandum.

Judge Bowes files a dissenting memorandum.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/2/2023