**COMMONWEALTH of Pennsylvania,**
**Appellant**

v.

**Brian J. WHITING, Appellee.**

Superior Court of Pennsylvania.

Argued Nov. 1, 2000.

Filed Jan. 31, 2001.

Thomas Ost-Prisco, Asst. Dist. Atty,, West Chester, for the Com., appellant.

David B. Miller, West Chester, for appellee.

Before JOYCE, OLSZEWSKI, JJ., and CIRILLO, President Judge Emeritus.*

OLSZEWSKI, J.:

¶ 1 The Commonwealth of Pennsylvania appeals from the order entered in the Court of Common Pleas of Chester County granting appellee's motion to suppress.[1] We reverse.

¶ 2 On the morning of February 15, 1999, North Coventry Police Officers were dispatched to a reported assault at the CarMike Coventry 8 Theaters located in Chester County, Pennsylvania. Upon their arrival, the officers encountered an elderly female movie theater employee who was handcuffed. The victim advised the police that at approximately 8:30 a.m., as she was opening up the theater for the day's business, she was confronted by a subject wearing a black mask and black clothing; the subject also brandished a handgun. The suspect forced the employee into a bathroom where she was handcuffed and told to remain. The police determined that three bank bags, containing almost $34,000.00 in United States currency, were stolen, as well as a black strong box containing approximately $100.00.

¶ 3 A witness at the Coventry Square Mall, located across the street from the CarMike Theater, reported a suspicious vehicle parked in the mall lot at approximately 8:25 a.m. on the morning of the robbery. The vehicle had a low tire, which the witness reported to the occupant of the car. The witness described the operator as a black male wearing a tan-colored ski mask. The male attempted to hide behind a newspaper when approached by the witness. The witness provided the officers with the registration number of the suspicious vehicle which was traced to the defendant/appellee, Brian Whiting.

¶ 4 At approximately 10:49 a.m. on the 15th, two North Coventry Police Officers [2] proceeded to Whiting's residence where they discovered a brown Renault Alliance convertible with the same registration as that of the car identified by the Coventry mall witness. The officers spoke to Whiting who admitted that he had been at the Coventry Square Mall that morning after 8:00 a.m. Whiting stated that he had been to Coventry where he had gone to the SuperFresh supermarket to purchase donuts.[3] The officers asked Whiting if he would accompany them to the North Coventry Police Station; he agreed.

¶ 5 At the station, officers questioned Whiting regarding his whereabouts on the morning of the 15th. Whiting recanted that he had bought a box of donuts at the supermarket at Coventry Square, stating that he bought a single donut and a news-

---

* P.J.E. Cirillo did not participate in the consideration or decision of this case.

1. We note that the Commonwealth has properly certified in its notice of appeal that this suppression order will terminate or substantially handicap the prosecution. *See* Pa.R.A.P. 311(d); *see also Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985).

2. These officers were joined by two Pottstown police officers.

3. In his testimony, Whiting stated the following:
   Q: When Sergeant Schurr and Officer Campbell were at the door, what conversation took place? What happened?
   A: Officer Schurr told me he was off duty and he wanted—wanted to know if I was at SuperFresh that morning.
   Q: What was your response?
   A: I said yes.
   A: He asked me if he could come inside the house. And I think I told him at that point yes, he could come in. And him [sic] and Officer Campbell came into the house and he started asking me questions.
   A: He asked me what was I doing there. And I told him that I bought a box of donuts and bought a newspaper. Then he asked me a few—he asked me—actually, I can't recall everything that he asked me, just he said can I—would I like to go down to the police station. I said—I asked him for what. He said just ask a few questions. That's when he told me that he knew I was on state parole.... N.T., 4/3/00, at 63–65.

paper. Whiting also confessed that he did, in fact, pick up a person on his way to Coventry Square despite his earlier statement that he had driven to Coventry alone. At 11:25 a.m., Whiting signed a consent to search form for his vehicle. The search uncovered a black nylon hooded mask with the face cut out, as well as a black nylon stocking and a black knit glove.

¶ 6 At approximately 7:00 p.m. that evening, the police obtained a search warrant for Whiting's bedroom in his residence. The search was executed about one-half hour later. The police uncovered $100.00 in U.S. currency, a black leather coat, and a black hooded sweatshirt.

¶ 7 In addition, the police interviewed Whiting's girlfriend who stated that the defendant had spoken with her, in the presence of her mother, while in prison and had told her that he had hidden some money in a closet in his residence.[4] He instructed his girlfriend to take $1,000.00 for herself and get a money order for $475.00 so that he could purchase a television for prison. On a later date, Whiting instructed his girlfriend to obtain the remainder of the money from the closet and put it in a bank account. On March 9, 2000, the girlfriend's mother placed the money into five separate manila envelopes, wrapped them in notebook paper, and deposited the money in a safe deposit box, under her name, at the National Penn Bank.[5] The police then obtained written consent from both the girlfriend and her mother to search the safe deposit box.

They recovered just over $24,000.00 in U.S. currency from the box.

¶ 8 Prior to trial, the defense filed an omnibus motion to suppress verbal statements as well as physical evidence obtained from the search of the defendant's bedroom and the safe deposit box. The trial court granted the motion, which resulted in the suppression of statements made during the questioning of the defendant at the police station, the suppression of the fruits of the search of the defendant's residence and car, as well as the evidence obtained during the search of the safe deposit box. The Commonwealth subsequently filed this appeal, claiming that the suppression order would terminate or substantially handicap the prosecution. *See* Pa.R.A.P. 311(d).

¶ 9 On appeal, the Commonwealth presents the following issues for our consideration:

(1) Whether the suppression court erred in suppressing evidence obtained from a search of the defendant's vehicle where the defendant knowingly, intentionally and voluntarily consented to the search?

(2) Whether the police had probable cause to search the defendant's residence?

(3) Whether the police obtained proper consent to search a safe deposit box rented by the mother of the defendant's girlfriend? [6]

Appellant's brief, at 5.

¶ 10 When reviewing an order reviewing a motion to suppress evidence, we must consider only the evidence of the appellee's witnesses, together with so much of the evidence for the prosecution that, read in the context of the record as a whole, remains uncontradicted). Therefore, we take the Commonwealth's version of this fact as true in our review of this suppression issue on appeal.

---

4. There appears to be a question as to whether only Whiting's girlfriend was present at this conversation or whether the girlfriend's mother was also a party to this conversation with Whiting. After thoroughly reviewing the testimony at the defendant's suppression hearing, there is no evidence, let alone contradictory evidence, put forth by Whiting or the defense that refutes the Commonwealth's witnesses who stated both mother and daughter went to prison and spoke with Whiting when he revealed the whereabouts of the money and gave permission to his girlfriend to find it and disburse it according to his wishes. *See Commonwealth v. Evans,* 443 Pa.Super. 351, 661 A.2d 881, 883 (1995), *aff'd,* 546 Pa. 417, 685 A.2d 535 (1996) (when

5. The safe deposit box was issued solely in the name of the defendant's girlfriend's mother.

6. The Commonwealth does not challenge the trial court's suppression of statements made during the custodial interrogation of Whiting.

granting a motion to suppress evidence, we must consider only the evidence of the appellee's witnesses, together with so much of the evidence for the prosecution that, read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Evans,* 443 Pa.Super. 351, 661 A.2d 881, 883 (1995), *aff'd,* 546 Pa. 417, 685 A.2d 535 (1996); *Commonwealth v. Baer,* 439 Pa.Super. 437, 654 A.2d 1058 (1995). We are bound only by those factual findings made by the suppression court that are supported by the record; we must thereafter determine whether the legal conclusions and inferences drawn therefrom are legitimate. *Commonwealth v. Walker,* 540 Pa. 80, 94, 656 A.2d 90, 97 (1995). If the evidence supports the factual findings of the suppression court, we are bound by them and may only reverse if the conclusions drawn therefrom are erroneous. *Commonwealth v. Lechner,* 454 Pa.Super. 456, 685 A.2d 1014, 1015–16 (1996).

¶ 11 In its first issue on appeal, the Commonwealth contends that the trial court improperly suppressed the evidence obtained as a result of the search of the defendant's vehicle. First, we note the fact that the defendant failed to raise any objection to the search of his vehicle. Despite the trial court's statement to the contrary, no oral amendment to Whiting's motion to suppress was made to include this issue. In fact, the extent of the trial court's treatment of this issue in its 1925(a) opinion is as follows:

> This issue was not raised in Defendant's Omnibus Pre–Trial Motion, and, in fact, was not mentioned until I made my oral ruling in the instant matter. However, once defense counsel heard that the statements were suppressed as a result of a custodial interrogation, it became clear to him that the consensual car search should fail for the same reason, i.e., violation of *Miranda* during a custodial interrogation. Defense counsel

sought leave to orally amend, which was granted. The car search must fail for the same reason that the statements were suppressed and accordingly, the contents of the car search are likewise suppressed.

Trial Court Opinion, 4/12/00, at 10–11. Without raising this issue in any form of objection or motion, Whiting effectively waived his challenge to the search of the car. Pa.R.Crim.P. 323(b) (if a timely motion is not made, the issue of suppression of such evidence shall be deemed to be waived); *Commonwealth v. Collazo,* 440 Pa.Super. 13, 654 A.2d 1174, 1176 (1995) ("any objection to the admissibility of the evidence on constitutional grounds is deemed waived under Rule 323(b)") (citations omitted); *Commonwealth v. Metzer,* 430 Pa.Super. 217, 634 A.2d 228 (1993) (motions to suppress evidence must ordinarily be made before trial to suppression court, and be made with specificity and particularity as to the evidence sought to be suppressed and the reasons for suppression). We have been unable to find any evidence of an oral motion to amend Whiting's pre-trial suppression order, nor do the docket sheets refer to such a filing. *See Commonwealth v. Micklos,* 448 Pa.Super. 560, 672 A.2d 796, 799 (1996) (where our Court was unable to find oral suppression motion or any such document filed in the docket sheet, "what is not of record does not exist").

¶ 12 Accordingly, it was improper, and therefore an abuse of discretion for the trial court to voluntarily raise this issue and rule upon it in Whiting's favor where he never raised the issue in any suppression motion, let alone with specificity and particularity. Moreover, it was improper for the reason that the court never took any testimony or evidence at the suppression hearing on this issue and, therefore, could not make an informed decision under Pa.R.Crim. 323(i).[7] *See Commonwealth v.*

---

7. *See* Pa.R.Crim.P. 323(i) (at the conclusion of the suppression hearing the trial judge shall

enter on the record a statement of findings of fact and conclusions of law as to whether the

*Metz,* 534 Pa. 341, 633 A.2d 125 (1993) (where trial court failed to discuss the merits of a suppression issue in its opinion and also failed to make findings of fact and conclusions of law as required by Rule 323(i), Superior Court did not have the benefit of any trial court reasoning on the issue and should not have overlooked the waiver doctrine). Finally, the Commonwealth was not able to fulfill its burden of presenting evidence on the issue and establishing that such challenged evidence was not obtained in violation of the defendant's rights. *See* Pa.R.Crim.P. 323(h). In fact, the transcribed testimony of the suppression hearing only touches upon the consent to search Whiting's car. *Id.*

¶ 13 Therefore, we agree with the Commonwealth that the court improperly granted the suppression of the evidence of the search of Whiting's vehicle and reverse that finding.

██ ¶ 14 Next, the Commonwealth asserts that the trial court improperly suppressed the evidence obtained in the search of Whiting's bedroom. We agree.

¶ 15 The police obtained a search warrant before conducting their search of Whiting's bedroom. Based upon the evidence uncovered from the search of Whiting's car, which was improperly suppressed, as well as the facts surrounding the robbery and witness testimony, we find that the magistrate had sufficient probable cause to issue the warrant.

¶ 16 In *Commonwealth v. Cameron,* 445 Pa.Super. 165, 664 A.2d 1364 (1995), our court reiterated the standard that a magistrate must meet in order to issue a proper and valid search warrant:

> The standard for determining whether probably cause exists for the issuance of a search warrant is the "totality of the circumstances test" as set forth below: The task of the issuing magistrate is simply to make a practical, common-

sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing] that probable cause existed."

*Id.* at 1367, citing *Commonwealth v. Karns,* 389 Pa.Super. 58, 566 A.2d 615 (1989), quoting *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

¶ 17 In the present case, the police had been informed by a witness that a suspicious car was parked across the highway from the robbery scene at the time of the crime. Moreover, the description of the suspect by the victim matched the description given by the witness who approached the car's occupant. Additionally, the witness told the police that the car's occupant tried to shield himself with a newspaper when he was approached. The car's tags, identified by the witness, were traced to the defendant. Finally, the car that the police found at Whiting's residence with the same tags identified by the witness also had a flat/low tire, as described by the witness. When asked by the police whether he had been at the SuperFresh supermarket in the Coventry Square Mall parking lot earlier that morning, Whiting responded in the affirmative and told them that he had been there around the time of the commission of the crime.

¶ 18 Looking at the totality of the circumstances, we find that there existed probable cause for the magistrate to issue a search warrant for Whiting's residence. Moreover, because the trial court improperly suppressed the evidence uncovered during the search of Whiting's car, that evidence provides further support for

evidence was obtained in violation of the defendant's rights and make a decision as to

relief).

probable cause to issue a search of Whiting's bedroom. In Whiting's car, the police uncovered a black mask, black stocking and black glove, all of which were reportedly donned by the suspect during the robbery. Accordingly, we find that the trial court improperly suppressed the search of Whiting's bedroom in his residence; under a totality of the circumstances, the magistrate issued a valid search warrant for the premises. *Cameron,* supra.

■ ¶ 19 Finally, the Commonwealth contends that the trial court improperly suppressed the contents of the National Penn Bank safe deposit box. The box was searched after Whiting's girlfriend and her mother offered their consent.

■ ¶ 20 First, we note that the safe deposit box was issued solely in the mother's name. There was no other designated owner of the box. Under such circumstances, we first must turn to the issue of whether Whiting had standing to pursue such a claim. Standing denotes the existence of a legal interest. *Commonwealth v. Peterson,* 535 Pa. 492, 497, 636 A.2d 615, 617 (1993).

■ ¶ 21 Our Court has noted that when a warrantless search is conducted and a defendant claims his or her constitutional rights have been violated, we must focus on two areas of inquiry to determine standing: [8] (1) did the defendant exhibit a subjective expectation of privacy in the place searched or the item seized? and (2) is the defendant's expectation one that society is prepared to recognize as reasonable and legitimate? *Commonwealth v. Lawley,* 741 A.2d 205, 209 (Pa.Super.1999)

8. Standing can be demonstrated by the existence of one of the following personal interests:
    (1) presence on the premises at the time of the search and seizure; (2) **a possessory interest in the evidence improperly seized;** (3) that the offense charged includes as an essential element of the prosecution's case, the element of possession at the time of the contested search and seizure; or (4) a propriety or possessory interest in the searched premises.

(citations omitted). Furthermore, in *Commonwealth v. Hawkins,* 553 Pa. 76, 718 A.2d 265 (1998), our Supreme Court opined:

> ■ In order to prevail on ... a [suppression] motion ... a defendant is required to separately demonstrate a personal privacy interest in the area searched **or effects seized,** and that such interest was "actual, societally sanctioned as reasonable, and justifiable." [citation omitted] Such a legitimate expectation of privacy is absent where an owner or possessor meaningfully abdicates his control, ownership or possessory interest. [citation omitted] [A] person must maintain the privacy of his possession in such a fashion that his expectations of freedom from intrusion are recognized as reasonable.

*Id.* at ——, 718 A.2d at 267. The court must also consider the totality of the circumstances and weigh the societal interests involved when determining the legitimacy of such expectation of privacy. *Commonwealth v. Johnson,* 556 Pa. 216, 727 A.2d 1089 (1999).

¶ 22 The trial court and Whiting rely heavily upon *Commonwealth v. Storck,* 442 Pa. 197, 275 A.2d 362 (1971), to support their conclusion that there was no valid consent to search the safe deposit box without Whiting's permission. In *Storck,* the Supreme Court was faced with deciding whether a boat owner, who merely stored a fugitive's duffel bags (personal belongings) for him, had the authority to grant the police permission to search and seize the contents of these bags without

*Commonwealth v. Hawkins,* 553 Pa. 76, 80, 718 A.2d 265, 267 (1998) (emphasis added). In the present case, we find that if Whiting were to demonstrate any of the above personal interests, it would be that under number two—a possessory interest in the money seized from the safe deposit box. Therefore, we· have confined our review to this legal theory.

the fugitive's permission. The court determined that the search violated the defendant's constitutional protection against an unreasonable search and seizure, stating:

> The suit cases, boxes and duffel bag were merely "stored" on Carreira's [the boat owner] boat. His possession was for a limited purpose, and somewhat akin to that of a bank which rents boxes in its safe box vault for the "storage" of its customers' valuables. Carreira had no authority to open the containers or to use them for his own purposes . . . nor do the facts establish that Storck [the fugitive/defendant] relinquished or abandoned his ownership or control in and over the articles stored. Hence, the contention of the Commonwealth that Carreira enjoyed an independent right of his own to consent to the seizure cannot be sustained.

*Id.* at 200, 275 A.2d at 364.

¶ 23 In the present case, the trial court received testimony from one of Whiting's arresting officers who stated that Whiting's girlfriend told him that Whiting had given her specific instructions with regard to where to locate the money, how to apportion the money, for what specific purposes the money should be allocated and, finally, where to store the remainder of the unused money. His girlfriend, however, did not comply with his wishes and, instead, gave the money to her mother who separated it and packaged it herself according to her own desires and placed it in her own safe deposit box.[9]

¶ 24 Presently, we do believe that Whiting had an expectation of privacy in the contents of the safe deposit box. Whiting desired the money to be placed in a bank account—a place not accessible by many and which carries with it a sense of security and privacy in the stored items. *See Commonwealth v. DeJohn*, 486 Pa. 32, 403 A.2d 1283 (1979) (recognizing that under Article I, Section 8, a defendant has an expectation of privacy in his or her bank records). *See also Lawley*, supra[10] (the accessibility of items to others has been viewed by our Court as a critical factor in determining whether a reasonable expectation of privacy exists in the items); *Commonwealth v. Richardson*, 476 Pa. 571, 383 A.2d 510 (1978) (where defendant robbed elderly woman and stole jewelry from her home, when the defendant later asked third party to hold jewelry pieces for him, defendant arguably retained a possessory interest in the items).

¶ 25 Our inquiry, however, does not end here. Whiting must also prove that such expectation would be perceived by society as being reasonable and legitimate.

9. Contrary to these assertions, in Whiting's motion to suppress he alleges that his girlfriend removed the money from his residence without either his consent or permission. He contends that under both the Pennsylvania (Article 1, section 8) and Federal (Fourth Amendment) Constitutions his rights were violated because neither his girlfriend nor her mother had sufficient ownership or control of the money to give valid consent to the police to search the safe deposit box and seize its contents. We note, however, that Whiting was never questioned nor did he testify at the suppression hearing with regard to any money taken by his girlfriend and placed in the safe deposit box at National Penn Bank. Therefore, he failed to prove exactly how his rights were violated by the search.

10. In *Lawley*, the defendant's former roommate indicated that she wanted the defendant to move out of their apartment and to remove his things from the premises. The defendant requested that she put his belongings together for him. The defendant, however, did not request that she place the items in a specific area or hold them inside the apartment. As a result, the court found that this non-specific and nonchalant attitude toward where and what to do with his belongings indicated that the defendant did not have an expectation of privacy in the items. *Id.* at 209–10. Moreover, the court also determined that because the defendant's items were ultimately stored in a garage in trash bags by the former roommate, the belongings were considered accessible by all fellow tenants of the apartment complex. Accordingly, "because of this open access, and the method of exposed storage, in unsecured and unmarked bags," the defendant did not have an expectation of privacy warranting the suppression of evidence found within the bags by the police. *Id.* at 210.

It is well established the police may conduct a warrantless search when a third party has given consent to such search if that third party "possesses common authority over or other sufficient relationship to the premises or effects sought to be inspected." *Commonwealth v. Lowery*, 305 Pa.Super. 66, 451 A.2d 245, 247 (1982) (citing *United States v. Matlock*, 415 U.S. 164, 168, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974)). In *Commonwealth v. Silo*, 480 Pa. 15, 389 A.2d 62 (1978), our Supreme Court iterated under what circumstances a third party may validly consent to a search and seizure of a defendant's item(s). The *Silo* court stated the following law:

> Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property ... but **rests rather on mutual use of the property by persons generally having joint access or control for most purposes** ....

*Silo, supra* at 23, 389 A.2d at 66 (emphasis added) (citing *United States v. Matlock*, 415 U.S. 164, 171 n. 7, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974)). *Accord Commonwealth v. Garcia*, 478 Pa. 406, 387 A.2d 46 (1978) (where mother had joint access or control over defendant's bedroom, mother could validly consent to its search and seizure of items contained therein as there can be no reasonable or legitimate expectation of privacy).

¶ 26 Unlike the boat owner in *Storck, supra*, Whiting gave his girlfriend explicit permission to not only go into his residence and take the money he had hidden, but then to divide it up, keep some for herself and place the remainder in a bank account. Whiting's instructions clearly indicate that he intended to give his girlfriend not only possession of the money, but also joint control over it and its whereabouts. *Silo, supra*. The fact that she was permitted to keep $1,000.00 of the currency for herself to do as she pleased also shows that he had relinquished some possessory interest in the property, thus reducing his Fourth Amendment privacy rights in the money. *See Commonwealth v. Richardson*, 476 Pa. 571, 383 A.2d 510 (1978) (where defendant robbed elderly woman and stole jewelry from her home, even when defendant asked third party to hold on to some of the items for him, the fact that the defendant also gave some of the jewelry to the same third party for money and gave other jewelry with the instruction to flush it down the toilet, defendant abandoned these later items, thus losing his standing to challenge their seizures).

¶ 27 In sum, these facts indicate that Whiting not only granted his girlfriend joint access to the money, but also he had reduced his expectation of privacy in the currency. Moreover, he gave these instructions in the presence of both his girlfriend and her mother—an act indicating that he wished the money and its location to be even less privately concealed as he revealed it to another third party.

¶ 28 Having found that Whiting did not have a legitimate and reasonable possessory interest in the money seized, we conclude that he had no standing to contest the search and seizure at hand. Whiting had absolutely no legal right to access the place searched—a safe deposit box taken out in a third-party's name. Not only did he have no key to the box, he had no permission or ability to gain admittance to the box or to uncover its contents—therefore, he had no legal interest in the place searched.

¶ 29 The trial court equates the relationship between Whiting and his girlfriend as that of a "bailment agreement." As our Supreme Court has stated:

> A bailment is the delivery of personalty for the accomplishment of some purpose upon a contract, express or implied, that after the purpose has been fulfilled, it shall be redelivered to the person who delivered it, otherwise dealt with according to his directions or kept until he reclaims it.

*Lawley, supra* at 211 (citing *Price v. Brown,* 545 Pa. 216, 221, 680 A.2d 1149, 1151 (1996)). However, we find this legal conclusion to be both unsupported and improper. The correct legal analysis for a suppression motion involves the initial determination as to whether the defendant had standing to raise the issue, and thus, assert his right to contest the search and seizure. Having concluded that Whiting did not have a legitimate expectation of privacy in the currency seized from the safe deposit box, and therefore, no standing, we reverse the trial court's suppression of such search.

¶ 30 Order reversed. Jurisdiction relinquished.