J-A05039-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYLER ADAM BURGER | : | No. 495 MDA 2021 |

Appeal from the Suppression Order Entered March 19, 2021
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0004994-2020

BEFORE:   OLSON, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED: FEBRUARY 8, 2022**

Appellant, the Commonwealth of Pennsylvania, appeals from the March 19, 2021, order entered in the Court of Common Pleas of York County, which granted, in part, and denied, in part, the pre-trial suppression motion filed by Appellee, Tyler Adam Burger.[1]  Following a careful review, we reverse the portion of the lower court's March 19, 2021, suppression order, which granted Appellee's motion to suppress; we affirm the portion of the suppression order,

---

[*] Former Justice specially assigned to the Superior Court.

[1] "The Commonwealth may appeal an interlocutory order suppressing evidence where, as here, the Commonwealth provides a certification with its notice of appeal that the order terminates or substantially handicaps the prosecution." **Commonwealth v. Williams**, 165 A.3d 994, 995 n.1 (Pa.Super. 2017) (citing Pa.R.A.P. 311(d)) (other citation omitted).

which denied Appellee's motion to suppress; and we remand for further proceedings consistent with this decision.

The relevant facts and procedural history are as follows: Appellee was arrested and charged with numerous possessory offenses related to controlled substances, as well as numerous driving while under the influence ("DUI") of alcohol or controlled substance offenses and failing to signal.[2] On February 9, 2021, Appellee filed a counseled omnibus pre-trial motion seeking to suppress evidence seized by Pennsylvania State Police Trooper Franklin Abreu, as well as the statements Appellee made to the trooper, following the stop of his vehicle.

Specifically, Appellee averred the initial stop of his vehicle was illegal since the trooper lacked the necessary reasonable suspicion or probable cause to effectuate the stop. *See* Appellee's Motion to Suppress, filed 2/9/21, at 6 ¶45. He also averred that, assuming the initial stop was proper, "it was extended beyond the necessary time to address the citations and no separate reasonable suspicion existed to extend the traffic stop and turn it into an

---

[2] Specifically, he was charged with possession of a controlled substance, 35 P.S. § 780-113(a)(16); possession of a small amount-personal use, 35 P.S. § 780-113(a)(31)(i); possession of drug paraphernalia, 35 P.S. § 780-113(a)(32); DUI: Controlled Substance-Schedule I-1st offense, 75 Pa.C.S.A. § 3802(d)(1)(i); DUI: Controlled Substance-Schedule II or III-1st offense, 75 Pa.C.S.A. § 3802(d)(1)(ii); DUI: Controlled Substance-Schedule I, II, or III-1st Offense, 75 Pa.C.S.A. § 3802(d)(1)(iii); failing to signal, 75 Pa.C.S.A. § 3334(a), and DUI of alcohol or a controlled substance, 75 Pa.C.S.A. § 3802(d)(2).

investigatory stop." *Id.* at 6 ¶46. In this vein, Appellee contended the following:

> 51. Removing [Appellee] from his vehicle and interrogating him as to the status of his license, his history of drug use, and the presence of drugs and paraphernalia amounts to an investigative detention that was not supported by reasonable suspicion.
>
> 52. Since the encounter was not supported by reasonable suspicion, it was an illegal seizure and any and all evidence obtained thereafter was likewise unconstitutional as "fruit of the poisonous tree." The doctrine of "fruit of the poisonous tree" prohibits the admission in a criminal prosecution of evidence derived from information gained in an unlawful search or manner. *See Wong Sun v. United States*, 371 U.S. 471 (1963) and *Commonwealth v. Myers*, 728 A.2d 960 (Pa.Super. 1999).
>
> 53. Therefore, [Trooper] Abreu did not possess any right or reason to remove [Appellee] from the vehicle, question him as to the contents of the vehicle, conduct a search of the vehicle based on [Appellee's] statements, conduct Field Sobriety Tests, arrest [Appellee], or have him submit to a blood draw.
>
> 54. As a result of all of the above, any and all evidence discovered by this unlawful detention and subsequent arrest, and any and all evidence derived from the information discovered, should be suppressed, including, but not limited to, statements made by [Appellee] in response to [Trooper] Abreu's questioning, evidence discovered based on the search resulting from that line of questioning, and the results of the blood draw.

*Id.* at 7-8 ¶¶51-54.

On March 19, 2021, the matter proceeded to a suppression hearing. The defense offered no witnesses while the Commonwealth offered the testimony of Trooper Abreu. Specifically, Trooper Abreu, who has been a state police trooper for five years, testified he has received extensive training regarding DUI investigations. N.T., 3/19/21, at 4. He estimated that, during his five

years of service, he has made "a few thousand traffic stops[,]" and he has been involved in "[a] few hundred" DUI investigations. *Id.* at 5.

Trooper Abreu testified that, on July 31, 2020, at approximately 4:45 p.m., he was in uniform and on routine patrol in an unmarked police vehicle in the Red Lion Borough of York County when another vehicle "caught [his] attention." *Id.* Specifically, Trooper Abreu indicated:

> As I was at the intersection,…I see [*sic*] the tan Chevy Malibu, [which] appeared to try to stop at the intersection, went beyond the stop sign[,] and over that white solid line.
>
> This vehicle was continuously in motion….Ultimately, as I started to drive,…the vehicle motioned for me to drive, and I stopped, and they ultimately ended up making a left-hand turn.
>
> At that point in time, the vehicle made the wide left-hand turn. I proceeded to go through the intersection, and make a u-turn just past the intersection into the library there in Red Lion Borough on the left-hand side of the road and attempted to locate this vehicle.

*Id.* at 5-6.

The trooper indicated he quickly located the vehicle and began to follow it. He then "observed the vehicle make a right-hand quote/unquote jerking motion, and then overcorrect back into the left, back to the left, and into the— back on to the roadway where we had just been traveling on." *Id.* at 6. As he continued to follow directly behind the vehicle, Trooper Abreu observed "[t]he vehicle again abruptly just pulled off of the main road, and essentially, like, the side of the roadway and almost striking the curb without signaling." *Id.* at 7. Trooper Abreu explained that, "[w]ithout activating their turn signal to initiate or to warn me that they were going to pull off, [the driver] instead

[made] an abrupt right-hand, like, right jerking motion towards the sidewalk." *Id.*

Trooper Abreu testified that, at this point, after observing violations of the motor vehicle code, he activated his unmarked vehicle's lights. He clarified the violations he observed included "the failure to signal prior to coming off of the main roadway indicating that they were going to pull off onto the roadway and/or attempt to park, [and] the fact that they almost struck the curb[.]" *Id.* He noted that he also had concerns as to whether the driver was having "a medical episode" or was "an impaired driver." *Id.* at 8.

Trooper Abreu testified he approached the driver's side of the tan Chevy Malibu and observed two occupants, including the driver who identified himself as Appellee, inside of the vehicle. *Id.* The trooper indicated he had a very brief conversation with Appellee, and, since the vehicle was stopped on an incline, he asked Appellee to move his vehicle to a safer location. Trooper Abreu testified that Appellee complied, and he again parked his unmarked police vehicle behind Appellee's vehicle. *Id.* The trooper noted his police vehicle's flashing "lights remained on throughout the entire interaction." *Id* at 9.

Trooper Abreu testified he approached the driver's side of the tan Chevy Malibu, and he observed that Appellee was "extremely sweaty, nervous. He was shaking, extremely talkative, disheveled, if you will, and he just seemed like he didn't know where he was at." *Id.* The trooper asked Appellee if he

would mind stepping out of the vehicle, Appellee indicated he did not mind, and after Appellee did so, the trooper "had a brief conversation [with him] at the front of the [un]marked police cruiser." *Id.* at 10. Specifically, the trooper testified on direct examination by the assistant district attorney ("ADA") as follows regarding his observations and the conversation he had with Appellee:

> Q. And once he was out of the vehicle, and in front of your [vehicle], did you notice any additional physical signs that caused you concern?
>
> A. I did. As I was talking with him, he was extremely talkative, but almost rambling on most of the time. He couldn't stand still, and a few other things. He was extremely fidgety, and just— again, didn't seem like he was familiar with where he was at, or what his purpose for being there was or anything like that of that nature.
>
> Q. Did you notice anything about his speech?
>
> A. It was—he was talkative, but almost, like, I couldn't make anything of it, very slurred to some degree.
>
> Q. And during your conversation, do you recall asking him questions about any drug or alcohol use?
>
> A. I did.
>
> Q. And what if you recall was his response?
>
> A. If I recall, he stated that he had smoked marijuana approximately to his knowledge 10 hours prior to the traffic stop.
>
> Q. And then did you continue to question him regarding any recent drug use?
>
> A. I did.
>
> Q. And what other information relative to the drug or alcohol use did you elicit from [Appellee]?
>
> A. He stated that he was currently prescribed methadone, approximately 80 milligrams, which he was to take on a daily basis, and that he had consumed that the day of.

*Id.* at 10-11.

Officer Abreu clarified that, during the conversation, Appellee told him that he had used marijuana, Xanax, gabapentin, and methadone. *Id.* at 11. Officer Abreu testified he administered field sobriety tests, and Appellee "was unable to perform" the walk-and-turn test. *Id.* at 13. Specifically, he noted Appellee was unable to maintain his balance, and "for safety reasons, we both agreed that it would be best to conclude the test at that point in time." *Id.*

Trooper Abreu noted that, during the entire encounter, including as he was initially approaching the driver's side door, he smelled the odor of marijuana. *Id.* at 13-14. He indicated Appellee later submitted to blood testing, and the lab results were positive for "Alprazolam, 11 hydroxy delta 9 THC, delta 9 carboxy THC, delta 9 THC, methadone, EDDP, fentanyl, and Norfentanyl[.]" *Id.* at 16.

On cross-examination, Trooper Abreu confirmed that, as he followed Appellee's vehicle:

> [I]t appeared [Appellee] was going to make a right-hand turn and then last minute this—when he saw me—made a quick left-hand turn and jerked back into the initial lane of travel, and then once he knows I'm behind him, upon confirming I'm behind him, he pulls off of the roadway, off of the travel way and almost struck the sidewalk there.

*Id.* at 17.

Trooper Abreu confirmed that, after he asked Appellee to pull to a safer location, and Appellee did so, he approached the driver's side window and asked Appellee, who was driving, to step out of the vehicle. *Id.* The trooper indicated he asked Appellee to exit the vehicle because Appellee was "fidgeting

- 7 -

inside the vehicle[,]" and he was not sure if anything was "going on" between Appellee and the passenger. *Id.*

Trooper Abreu confirmed that, as soon as Appellee exited the vehicle, he had a brief conversation with Appellee, who "stated a few things," including "that he had marijuana in the vehicle[.]" *Id.* at 20. The trooper indicated he did not search Appellee's vehicle but that Appellee "brought the items out of the vehicle[.]" *Id.* Specifically, he told Appellee to "grab [his] personal belongings[,]" and Appellee did so, removing from the backseat a black pouch containing a plastic baggie of marijuana. *Id.* at 22. Trooper Abreu indicated he arrested Appellee, and since the only other occupant had a suspended license, and the vehicle was legally parked, the officer did not have Appellee's vehicle towed. *Id.* at 23.

Regarding Appellee's inability to complete the walk-and-turn field sobriety test, the trooper confirmed on cross-examination that Appellee "mentioned something about his ankle[.]" *Id.* at 24. Moreover, on re-direct examination, the trooper confirmed Appellee did not produce a valid prescription for the Xanax or marijuana. *Id.*

After the defense rested without presenting any evidence, the suppression court permitted the attorneys to present oral arguments regarding their positions. Appellee's counsel argued:

> [M]y argument is two-fold. First, the stated reason for the traffic stop is a turn signal violation. [Appellee] was admittedly lost, and when Trooper Abreu pulled behind him, he was already

on the side of the road where it appears he almost made a wrong turn and was getting back on the correct road.

Since he was already over it, there is no need for a turn signal, and therefore, no violation occurred and the stop is not justified at that point.

\*\*\*

Second, even if it is found that the turn signal violation occurred, Trooper Abreu extended a mere encountered [*sic*] traffic stop into an investigatory detention without…reasonable suspicion[.] By removing [Appellee] from the vehicle Trooper Abreu created a reasonable belief that [Appellee] was not free to leave.

Trooper Abreu claims that he smelled marijuana in the car. First of all, the odor of marijuana alone is not enough to meet reasonable suspicion under the totality of the circumstances test under Barr.

Second, even if it is, Trooper Abreu's forwards [*sic*] and actions do not support that he actually smelled marijuana that day.  He never mentions the odor of marijuana during his questioning of [Appellee].

His first question is about the status of his license and not about anything in the vehicle.  Only when [Appellee] brings up that he smokes does Trooper Abreu begin questioning him regarding the presence of drugs in the vehicle.  He doesn't even start with marijuana, he first goes with methodone and heroin.

I would also argue that Trooper Abreu could not have possibly smelled the marijuana that was in the vehicle, it was in the back seat of the car in a backpack wrapped in a jacket in a cloth pouch sealed in plastic and only a small amount.

In either of those cases, Your Honor, the physical evidence, the statements made by [Appellee], and his field sobriety tests should be suppressed as fruit of [the] poisonous tree under Wong, Sun, and Myers, and the charges should be dismissed for lack of evidence.

\*\*\*

THE COURT: So tell me again what items are you asking me to suppress?  The statements of the [Appellee] starting when?

[DEFENSE COUNSEL]: When he was pulled out of the vehicle, Your Honor.  My argument is that when he was taken out

- 9 -

of the vehicle that became an investigatory detention without reasonable suspicion needed to do so, and therefore, any statements made, any physical evidence acquired, and the standard field sobriety tests should be suppressed.

*Id.* at 26-28.

In response, the ADA argued the trooper had probable cause to stop Appellee's vehicle since Appellee "didn't use the turn signal" when he abruptly pulled off the road and tried to park. *Id.* at 30. The ADA further argued that, after the stop, the trooper immediately developed a reasonable suspicion that Appellee was DUI when he approached the vehicle, smelled marijuana, and observed Appellee's physical appearance and demeanor. *Id.*

The ADA contended the trooper was permitted to ask Appellee to exit the vehicle as a matter of course, and during the brief conversation, the trooper "asked about the status of [Appellee's] license, and immediately after that, asked about drug use, and [Appellee] immediately offers the fact that he has marijuana in the car. The trooper continues to develop his suspicions of DUI asking multiple questions about [it]." *Id.* at 31. The ADA also argued the trooper thereafter had probable cause to arrest Appellee and request that he submit to a blood test.

The suppression court noted it had no difficulty with the trooper asking Appellee to exit the vehicle, but that the court wondered why "no one's

mentioned the magic word of *Alexander*[3] today. Why is that? That's what I thought I was going to hear about today." *Id.* at 33 (footnote added). In response, defense counsel indicated *Alexander* was not an issue since Appellee "essentially gave permission to search the vehicle[.]" *Id.* at 34.

The suppression court then turned to the ADA and asked "So when, [ADA], do you believe [Appellee] should have been Mirandized?" *Id.* The ADA responded that the trooper was not required to give Appellee *Miranda*[4] warnings until "when the decision was [made] to place him under arrest…and he was in handcuffs[.]" *Id.* The suppression court asked the ADA if "all of those questions that were asked before [Appellee] was arrested were okay[,]" and the ADA responded in the affirmative. *Id.* The ADA then noted the Commonwealth was unprepared to address the *Miranda* issue specifically since "it was not raised in the pre-trial motion." *Id.* at 35. The suppression court then indicated "And no one's talked about a consent for the blood, so I'm guessing that he signed a consent?" *Id.* at 36. Defense counsel confirmed Appellee had signed a consent form. *Id.*

The suppression court then gave its ruling on the record as follows:

_____

[3] While it is not entirely clear, it appears the suppression court was alluding to *Commonwealth v. Alexander*, ___ Pa. ___, 243 A.3d 177 (2020), in which our Supreme Court held that warrantless searches of vehicles require both probable cause and exigent circumstances under the state constitution. This issue was not raised in Appellee's pre-trial suppression motion.

[4] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966).

- 11 -

> Defense is seeking to suppress statements of [Appellee] from the time he was exiting the vehicle and all items from within the vehicle.
>
> It's an interesting question,…given the fact that [Appellee] clearly was very nervous and fidgety, clearly was very difficult to understand, and clearly offered up a lot of information that he wasn't even asked to offer up.
>
> The problem that th[e] [suppression court] has with the questioning is that we believe it went beyond the mere encounter, and that it went almost to the detention stage without any *Miranda* warnings.
>
> So we will suppress the drugs in the car, and any statements in response to whether there were drugs in the car.
>
> We do not suppress his statements about any drugs that he ingested, given the fact that there was the smell of marijuana emanating from the vehicle, and he was the driver of the vehicle.
>
> We certainly don't suppress his blood draw, as there has been no request to do so, so his charges of DUI are still very valid.

*Id.* at 36-37.[5]

On that same date, March 19, 2021, the suppression court filed an order granting, in part, and denying, in part, Appellee's pre-trial suppression motion. The suppression court indicated "Drugs in car & response to drugs in car are suppressed." Suppression Court Order, filed 3/19/21.

---

[5] As to Appellee's pre-trial suppression claim that the initial stop of his motor vehicle was improper since the trooper did not observe a violation of the motor vehicle code, we note the suppression court found "there was no turn signal" when Appellee "pulled over abruptly." *Id.* at 26.

- 12 -

On Monday, April 19, 2021, the Commonwealth filed a timely notice of appeal.[6] The trial court directed the Commonwealth to file a Pa.R.A.P. 1925(b) statement, the Commonwealth timely complied, and the trial court filed a responsive Pa.R.A.P. 1925(a) opinion. In its Rule 1925(a) opinion, the trial court relevantly explained:

> In reaching its decision to suppress some of the evidence, the court found that the Trooper's questioning of [Appellee] during the traffic stop went beyond the mere encounter stage, and moved into the detention stage without any *Miranda* warnings. The court therefore suppressed the drugs found in the car and any statements in response to whether there were drugs in the car. The court did not suppress [Appellee's] statements made about any drugs he ingested given the fact that the Trooper testified to the smell of marijuana coming from the vehicle, [Appellee] was the driver, and when questioned about the smell, [Appellee] volunteered information. The court did not suppress his blood draw because there was no request to do so[.]

Trial Court Opinion, filed 7/1/21, at 6-7 (citations to transcript omitted).

As to whether Appellee properly raised the issue of a *Miranda* violation in the lower court and/or whether the suppression court erred by *sua sponte* granting, in part, Appellee's suppression motion based on a *Miranda* violation, the trial court indicated "the *Miranda* issue was raised by [Appellee] in the sense that the omnibus pre-trial motion argues that the traffic stop moved beyond a mere encounter to an investigative stop and ultimately to a custodial

_____

[6] The thirtieth day for the Commonwealth to file an appeal was Sunday, April 18, 2021, and therefore, the appeal was timely filed. *See* 1 Pa.C.S.A. § 1908 ("Whenever the last day of any such period shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation.").

detention, which requires *Miranda* warnings prior to questioning [Appellee]." *Id.* at 12 (citing Appellee's Omnibus Pre-Trial Motion, February 9, 2021, pp. 4-5).[7]

The trial court indicated that, at some point during the trooper's questioning of Appellee, but before Appellee retrieved the drugs from his vehicle, "[Appellee was] in custody and was subject to police interrogation by Trooper Abreu…Thus, the issue of *Miranda* warnings was properly before the court during the suppression hearing." *Id.* at 16-17 (citation omitted).

On appeal, the Commonwealth avers the suppression court abused its discretion in granting, in part, Appellee's suppression motion. We note:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the …record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts. *Commonwealth v. Miller*, 56 A.3d 1276, 1278–79 (Pa.Super. 2012) (citations omitted). "Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions." *Commonwealth v. Brown*, 606 Pa. 198, 996 A.2d 473, 476 (2010) (citation omitted).

*Commonwealth v. Korn*, 139 A.3d 249, 252–53 (Pa.Super. 2016).

---

[7] As discussed *infra*, we have reviewed Appellee's pre-trial suppression motion and find no indication Appellee averred the encounter led to a custodial detention for which *Miranda* warnings were required.

"It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." ***Commonwealth v. Gallagher***, 896 A.2d 583, 585 (Pa.Super. 2006). Moreover, our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. ***In re L.J.***, 622 Pa. 126, 79 A.3d 1073, 1087 (2013).

The Commonwealth contends the suppression court erred in granting the motion to suppress as it relates to Appellee's statements that he had drugs in the vehicle. Specifically, the Commonwealth contends the suppression court erred in suppressing Appellee's statements on the basis he made the statements while he was subjected to custodial interrogation without proper ***Miranda*** warnings in violation of the Fifth Amendment.

In this vein, the Commonwealth argues Appellee limited the issues in his pre-trial suppression motion to whether the trooper properly stopped his vehicle and whether he was subjected to a proper investigative detention supported by reasonable suspicion at the time Appellee admitted he had drugs in his vehicle.

Accordingly, the Commonwealth contends that, since Appellee did not allege in his pre-trial suppression motion that he was subjected to a custodial interrogation, or otherwise suggest a ***Miranda*** violation, the suppression court erred in *sua sponte* raising the issue since Appellee had waived the issue by

failing to include in it his motion to suppress. We agree with the Commonwealth's argument.

Pennsylvania Rule of Criminal Procedure 581(D) requires that a motion to suppress "state specifically and with particularity the evidence sought to be suppressed, **the grounds for suppression**, and the facts and events in support thereof." Pa.R.Crim.P. 581(D) (emphasis added). Our decision in ***Commonwealth v. Whiting***, 767 A.2d 1083 (Pa.Super. 2001), is instructive.

In ***Whiting***, the trial court granted the defendant's motion to suppress statements as well as physical evidence found in the defendant's home and vehicle. ***Id.*** at 1086. However, the defendant did not raise in his suppression motion any issues regarding the physical evidence found in the vehicle, and the defendant did not amend his motion to include this issue. ***Id.*** We concluded the trial court abused its discretion.

Specifically, we held:

> Without raising this issue in any form of objection or motion, [the defendant] effectively waived his challenge to the search of the car. We have been unable to find any evidence of an oral motion to amend [the defendant's] pre-trial suppression motion, nor do the docket sheets refer to such a filing.
>
> Accordingly, it was improper, and therefore an abuse of discretion for the trial court to voluntarily raise this issue and rule upon it in [the defendant's] favor where he never raised the issue in any suppression motion, let alone with specificity and particularity. Moreover, it was improper for the reason that the court never took any testimony or evidence at the suppression hearing on this issue and, therefore, could not make an informed decision under Pa.R.Crim.[P.] 323(i). Finally, the Commonwealth was not able to fulfill its burden of presenting evidence on the issue and establishing that such challenged evidence was not obtained in violation of the defendant's rights. In fact, the

transcribed testimony of the suppression hearing only touches upon the consent to search [the defendant's] car.

*Id.* at 1087-88 (citations and footnote omitted).

Subsequently, in **Commonwealth v. Banks**, 165 A.3d 976 (Pa.Super. 2017), this Court relied upon and applied the legal precepts set forth in **Whiting**, **supra**. Specifically, in **Banks**, the trial court granted the defendant's motion to suppress on the basis the defendant was subjected to an investigative detention without reasonable suspicion when the police questioned him on his porch.

On appeal in **Banks**, the Commonwealth argued the trial court erred in granting the suppression motion on this basis since the defendant failed to raise in his motion any allegation that he was illegally detained. Rather, the Commonwealth averred the defendant's motion to suppress "simply alleged that the search of the residence was illegal as the [police] lacked reasonable suspicion to search the residence based on an anonymous tip, and [he] did not raise the issue of whether [the defendant] had been seized at the outset of the conversation on his porch." **Id.** at 980. Thus, the Commonwealth asserted the defendant had waived any issue related to the police's questioning of him on the porch, and therefore, the trial court erred in granting the suppression motion on this basis.

Relying upon **Whiting**, this Court agreed with the Commonwealth's argument and reversed the suppression order. Specifically, we held:

Here, [defendant] Banks did not argue that he was illegally seized in his motion to suppress; he argued only that police lacked reasonable suspicion to search the residence. Banks also did not amend his motion to raise the seizure issue either orally or in writing. Because Banks failed to argue that he was illegally seized, the Commonwealth had no opportunity to respond to that argument at the hearing. *See Whiting*, 767 A.2d at 1088. Accordingly, we conclude that the trial court abused its discretion in suppressing the physical evidence found in Banks' residence on grounds not asserted in Banks' motion.

*Banks*, 165 A.3d at 980-81 (footnotes omitted).

Furthermore, subsequent to this Court's Opinion in *Banks*, this Court relied upon *Banks* and reversed an order granting a motion to suppress in *Commonwealth v. Carter*, 234 A.3d 729 (Pa.Super. 2020). Therein, in granting the defendant's suppression motion, the trial court concluded that an encounter between the police and the defendant was "a custodial interrogation requiring *Miranda* warnings and a valid waiver, and that [the defendant] did not knowingly, intelligently, or voluntarily waive his *Miranda* rights." *Carter*, 234 A.3d at 732 (citation to trial court opinion omitted). Specifically, the trial court held the defendant did not voluntarily waive his *Miranda* rights since the Commonwealth failed to establish the defendant was aware of the general nature of "'the transaction giving rise to the investigation[.]'" *Id.* at 733 (citations omitted).

On appeal to this Court in *Carter*, the Commonwealth argued the suppression court erred in suppressing evidence based on a suppression theory, which was not raised by the defendant in his pre-trial motion or during the evidentiary hearing. Specifically, the Commonwealth asserted the

defendant did not claim he was unaware of the nature of the transaction giving rise to the investigation; but rather, the defendant claimed his physical and psychological state was such that he could not knowingly and voluntarily waive his **Miranda** rights.

Relying upon the legal precepts set forth in **Banks**, **supra**, this Court agreed with the Commonwealth and reversed the suppression order. Specifically, we held:

> [The defendant] did not challenge the validity of his waiver based on a misunderstanding of "the general nature of the transaction giving rise to the investigation." Nevertheless, the suppression court ignored the basis for the motion—that [the defendant's] physical and psychological state was such that he could not knowingly, intelligently, and voluntarily waive his **Miranda** rights—and instead *sua sponte* determined that "under the circumstances, a 'palpable ambiguity' existed as to the reason for the interrogation; was [the defendant] being questioned as a suspect or a victim[?]" According to the suppression court, the Commonwealth "was required to prove on a preponderance of the evidence that [the defendant] knew of the occasion of the interrogation."
>
> \*\*\*
>
> The Commonwealth [argued on appeal] that [the defendant] did not suggest, either in his motion or at the suppression hearing, that he was unaware of the reason the detectives were in his hospital room. The motion and the testimony presented at the hearing related strictly to [the defendant's] medical condition and his ability to…make a knowing, intelligent, or voluntary waiver of his **Miranda** rights under those circumstances.
>
> Our reading of the motion and the hearing transcript supports the Commonwealth's contention.
>
> \*\*\*
>
> [The defendant] did not call any witnesses at the suppression hearing. The only witness was [the detective]. No testimony was elicited from [the detective] even remotely

- 19 -

suggesting that [the defendant] did not understand the "direction and purpose of the questioning of the hearing."

While we take no issue with the suppression court's Findings of Fact and recognize we are, therefore, bound by them, we conclude the suppression court did not properly apply the law to the facts as established at the suppression hearing. [Pa.R.Crim.P.] 581(D) requires that a motion to suppress "state specifically and with particularity the evidence sought to be suppressed, **the grounds for suppression**, and the facts and events in support thereof." Pa.R.Crim.P. 581(D). Here, the suppression court erred by suppressing evidence on grounds not asserted in [the defendant's] motion. ***Commonwealth v. Banks***, 165 A.3d 976, 980-81 (Pa.Super. 2017). Therefore, we reverse the suppression court's order granting [the defendant's] motion to suppress and remand for further proceedings.

***Carter***, 234 A.3d at 733-35 (bold in original) (citations omitted).

Applying the legal precepts of ***Whiting***, ***Banks***, and ***Carter*** to the case *sub judice*, we conclude the suppression court erred in granting, in part, Appellee's motion to suppress based on grounds not asserted in Appellee's pre-trial suppression motion.

Specifically, contrary to the suppression court's indication, Appellee raised no claim in his pre-trial suppression motion indicating that he was subjected to a custodial interrogation or that his ***Miranda*** rights were violated. Rather, in his pre-trial suppression motion, Appellee challenged the initial stop of his vehicle on the basis the police lacked the necessary reasonable suspicion or probable cause to stop his vehicle. ***See*** Appellee's Motion to Suppress, filed 2/9/21, at 6 ¶45.

Additionally, Appellee contended that, "[i]f the traffic stop is ruled to be proper, it was extended beyond the necessary time to address the citations

- 20 -

and no separate reasonable suspicion existed to extend the traffic stop and turn it into an investigatory stop." *Id.* at ¶45. Appellee reiterated that he was subjected to "an investigative detention that was not supported by reasonable suspicion." *Id.* at 7 ¶51. He contended that any evidence seized as a result of this "encounter…not supported by reasonable suspicion" should be suppressed as "fruit of the poisonous tree." *Id.* at ¶52.

Furthermore, Appellee did not amend his motion to suppress, either orally or in writing, to include the theory relied upon by the suppression court in granting the suppression motion. Appellee did not seek to raise or argue any alleged *Miranda* violation during the suppression hearing. In fact, the issue was raised for the first time by the suppression court *sua sponte* after the parties had rested their cases. Upon being questioned by the suppression court as to whether Appellee should have been given his *Miranda* warnings, the ADA specifically informed the suppression court it was unprepared to address the *Miranda* issue since "it was not raised in the pre-trial motion." N.T., 3/19/21, at 35.

Accordingly, consistent with binding precedent, while we take no issue with the suppression court's factual findings in the case *sub judice*, we conclude the suppression court did not properly apply the law to the facts inasmuch as it suppressed the evidence on grounds not asserted by Appellee in the court below. *See Whiting*, *supra*; *Banks*, *supra*; *Carter*, *supra*. Therefore, we reverse the suppression court's order granting, in part,

Appellee's motion to suppress and remand for further proceedings consistent with this decision.[8]

Order denying, in part, suppression motion affirmed. Order granting, in part, suppression motion reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/08/2022

---

[8] The Commonwealth also contends the suppression court erred in suppressing the drugs, which Appellee removed from his vehicle and gave to the trooper, on the basis the drugs were "fruit of the poisonous tree" flowing from Appellee's non-***Mirandized*** statements. As discussed *supra*, we conclude the suppression court erred in suppressing Appellee's statements on a basis not alleged by Appellee (*i.e.,* under the theory that the statements were made while Appellee was subjected to custodial interrogation absent proper ***Miranda*** warnings). Accordingly, we also conclude the suppression court erred in suppressing the drugs, which Appellee removed from his vehicle, on the basis the drugs were "fruit of the poisonous tree" flowing from a ***Miranda*** violation, which was not raised by Appellee in the court below.